**Sheldon J. SEVINOR, et al.,
Plaintiffs, Appellants,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and Roger T. Patch,
Defendants, Appellees.**

**No. 86–1128.**

United States Court of Appeals,
First Circuit.

Argued Sept. 8, 1986.
Decided Dec. 18, 1986.

---

Craig P. Gilmartin, with whom Law Offices of William P. Apostolica, Boston, Mass., was on brief, for plaintiffs, appellants.

Bryan G. Killian, with whom David A. Guberman and Sherin and Lodgen, Boston, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Plaintiffs-appellants Dr. Sheldon J. Sevinor, Plastic Surgery Services, P.C., and Plastic Surgery Services Money Pension Plan and Defined Benefit Pension Plan brought this action below against their former stockbroker Roger T. Patch, and his employer, Merrill Lynch, Pierce, Fenner & Smith, Inc. Plaintiffs' basic claim was for alleged excessive trading or "churning" of their accounts by defendants. Plaintiffs further alleged fraudulent misrepresenta-

tion by defendant Patch in recommending particular investments. Plaintiffs sought to recover damages pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)(1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1985); The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.;* Massachusetts Blue Sky Law, M.G.L. ch. 110A; chapters 93A and 231 of the Massachusetts General Laws; and the common law.

Plaintiffs' complaint was filed on October 12, 1984. Defendants filed their answer on December 5, 1984, and raised the affirmative defense of compulsory arbitration. The parties proceeded with discovery, and exchanged requests for production of documents and interrogatories.

On May 15, 1985, and after the aforementioned discovery acts, defendants filed a motion to compel arbitration as a result of the Supreme Court decision in *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Plaintiffs opposed defendants' motion on the grounds that defendants had waived the right to compel arbitration and that the Rule 10b–5 and RICO claims were not arbitrable. The United States Magistrate rejected plaintiffs' argument of waiver, granted defendants' motion to compel arbitration as to the Rule 10b–5 claims, and denied defendants' motion as to the RICO claim. Moreover, the Magistrate denied defendants' request that federal court proceedings on the RICO count be stayed pending the outcome of the 10b–5 arbitration.

Both plaintiffs and defendants moved before the district court for partial reconsideration of the Magistrate's order. Plaintiffs sought reconsideration of the waiver issue as well as the determination that claims under Rule 10b–5 are arbitrable. Defendants sought to vacate that portion of the order which denied a stay of RICO proceedings pending the 10b–5 arbitration.

The district court agreed with defendants and disagreed with plaintiffs, ruling that no waiver had occurred, that the 10b–5 claim was arbitrable and that RICO proceedings in the district court would be stayed pending the outcome of the 10b–5 arbitration. This appeal followed.

On appeal, plaintiffs-appellants challenge the district court's determinations that no waiver occurred, that claims under Rule 10b–5 can be arbitrated, and that related RICO claims can be stayed pending arbitration. Defendants-appellees, by contrast, assert that this court has no appellate jurisdiction and that, even if it does, the district court's holding should be affirmed in all respects. For reasons stated more fully below, and in light of our opinion in *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 806 F.2d 291 (1st Cir.1986), we affirm the conclusions of the district court.

## I. *Appellate Jurisdiction*

█ Defendants-appellees raise a preliminary challenge to this court's jurisdiction. Specifically, defendants argue that plaintiffs' complaint originally set forth a claim under Mass.Gen.Laws ch. 93A, that the Massachusetts Supreme Judicial Court has allegedly ruled such claims to be equitable in nature, *see Nei v. Burley,* 388 Mass. 307, 311–314, 466 N.E.2d 674, 677–680 (1983), and that therefore, such an equitable component to plaintiffs' cause of action defeats appellate jurisdiction under the doctrine that appeals can only be had where the complaint is predominantly legal in nature. *See Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 795 F.2d 1111, 1113–1114 (1st Cir.1986) (surveying cases and "dominant purpose" test). Thus, because defendants regard plaintiffs' claim under Mass.Gen.Laws ch. 93A as equitable and more than incidental in nature, defendants argue that the inclusion of a chapter 93A count defeats any "legal" characterization of the complaint, and hence, appellate jurisdiction.

As plaintiffs-appellants noted at oral argument, the chapter 93A claim is effectively null or mooted due to the Supreme Judicial Court's decision in *Cabot Corp. v. Baddour,* 394 Mass. 720, 477 N.E.2d 399

(1985), where it was held that securities fraud does not suffice to state a claim under chapter 93A. Thus, given the lack of doubt that the claim under chapter 93A is no longer a claim, we do not regard its presence as controlling the legal versus equitable nature of the action before us. *See H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs and Helpers Local Union No. 384*, 755 F.2d 324, 327–328 (3d Cir.1985) (mooted equitable claims that on their face have no legal basis may properly be characterized as "merely incidental," and hence, do not defeat appellate jurisdiction). Accordingly, because plaintiff's action, independent of the chapter 93A claim, is purely "legal" and damages-oriented in nature, appellate jurisdiction exists.

## II. *Waiver*

■ As noted above, plaintiffs' complaint was filed on October 12, 1984. Defendants' answer, filed on December 5, 1984, raised the affirmative defense of compulsory arbitration. The parties then engaged in preliminary acts of discovery, exchanging requests for production of documents and interrogatories. On May 15, 1985 and seven months after plaintiffs filed their complaint, defendants filed a motion to compel arbitration as a result of the Supreme Court decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Plaintiffs argue that, because defendants' motion to compel arbitration allegedly came too late, defendants' right to compel such arbitration has been waived. For the reasons stated below, we disagree.

In order for plaintiffs to prevail on their claim of waiver, they must show prejudice. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir.1985); *Hilti v. Oldach*, 392 F.2d 368, 371 (1st Cir.1968). The prejudice alleged by plaintiffs in this case is the burden of replying to over 300 interrogatories and 12 comprehensive requests for production of documents, some of which apparently sought material dating back 25 years. Moreover, plaintiffs allege prejudice from the fact that defendants continually sought

continuances of deadlines to respond to the former's discovery requests.

The United States Magistrate, unimpressed by plaintiffs' assertions of unduly burdensome discovery, concluded that plaintiffs' "lack of a showing of prejudice," as well as the strong public policy favoring arbitration, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1985), required a finding of no waiver. On *de novo* review, the district court did not overturn the Magistrate's assessment, and we can find no compelling ground for doing so either. *See J & S Construction Co., Inc. v. Travelers Indemnity Co.*, 520 F.2d 809 (1st Cir.1975) (no waiver by defendants despite 13 month delay in seeking to compel arbitration, answering interrogatories and permitting taking of depositions).

Finally, we note our agreement with the Magistrate's observation that "defendants' use of time extensions, at the very least, appears to be disingenuous; but any harm caused by this tactic is ameliorated by defendants' Ninth Affirmative Defense in which defendants expressly put plaintiffs on notice of defendants' position on arbitration." *See also Hilti v. Oldach, supra*, at 371 (where defendant's answer puts plaintiff on notice of the arbitration defense, "the burden is heavy on one who would prove waiver"). Accordingly, because we do not find either of plaintiffs' claims of prejudice compelling, we affirm the conclusions below that no waiver occurred.

## III. *Arbitrability of Claims Under Section 10(b) of the Securities Act of 1934*

■ On appeal plaintiffs urge us to reverse the Magistrate's determination, affirmed by the district court, that claims arising under Section 10(b) and Rule 10b-5 are arbitrable. For the reasons stated in our opinion in *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 806 F.2d 291, 295–298 (1st Cir.1986), we conclude that claims arising under Rule 10b-5 are arbi-

trable, and therefore, affirm the order of the district court below.

## IV. *Propriety of Stay on RICO Proceedings Pending Arbitration of the Section 10(b) Count*

■ Appellants make two central arguments on this issue. First, they assert that the only reason for a stay of litigation pending arbitration is that such arbitration will have a preclusive or collateral estoppel effect on the federal court proceedings. Accordingly, because the Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd, supra,* at 1243–1244, expressed reservations regarding the preclusive effect of arbitration on certain federal claims, appellants suggest that we cannot be influenced by collateral estoppel considerations in deciding the propriety of the stay below. Second, appellants cite the concurring opinion of Justice White in *Dean Witter Reynolds, Inc. v. Byrd, supra,* where he stated as follows:

> ... [O]nce it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course. And while the matter remains to be determined by the District Court, I see nothing in the record before us to indicate that arbitration in the present case should be stayed.

*Id.* at 1245.

We believe that appellants misread *Byrd,* as well as Justice White's "concern for speedy resolution" of the case. In *Byrd,* the Supreme Court had before it a stay of arbitration, not a stay of federal court proceedings, and the Court addressed the propriety of only the former in light of the mandatory language of the Federal Arbitration Act. *Id.* at 1241. More importantly, contrary to appellants' suggestion, we do not believe that any member of the *Byrd* Court has required us to ignore the potential preclusive, evidentiary or issue-narrowing effect of arbitration, as well as considerations of expediency and conservation of judicial economy in deciding the propriety of a stay. In contrast to *Byrd,* there is no federal statute mandating that district court action on the RICO claim proceed. Given this lack of statutory compulsion, the district court's decision to stay RICO proceedings can only be overturned for an abuse of discretion. *See Moses H. Cone Hospital v. Mercury Construction Corp., supra,* at 939 n. 23.

In determining whether the district court has abused its discretion, we consider it relevant that the RICO claim is based on predicate Rule 10b–5 violations, that such alleged violations are the subject of arbitration, and that, depending on how the collateral estoppel issue is resolved, an arbitral decision in favor of defendants could, although we do not decide the question, preclude the need for further district court action on the RICO count. Even assuming no preclusive effect, the arbitration either could be accorded evidentiary weight in a subsequent district court action, *see McDonald v. City of West Branch,* 466 U.S. 284, 292–293 n. 13, 104 S.Ct. 1799, 1804 n. 13, 80 L.Ed.2d 302 (1984), or could serve to "clarify and perhaps even simplify the remaining issues which must be litigated." *Home Life Insurance Co. v. Kaufman,* 547 F.Supp. 833, 836 (S.D.N.Y.1982) (citing cases). Thus, because there exists no statutory command that the RICO action proceed, and because the outcome of the RICO claim could, under certain circumstances, either be governed or streamlined by the Rule 10b–5 arbitration, we believe the district court could properly believe it was in the interest of both efficiency and judicial economy that the civil RICO proceedings be stayed pending arbitration of plaintiffs' Rule 10b–5 counts. This is similar to the approach of the Second Circuit, *see NPS Communications, Inc. v. Continental Group, Inc.,* 760 F.2d 463, 466 (2d Cir.1985) (staying district court proceedings on antitrust claim pending arbitration); *S.A. Mineracao Da Trindade-Samitri v. Utah In-*

*ternational,* 745 F.2d 190, 196–197 (2d Cir. 1984) (staying RICO claims pending arbitration of, *inter alia,* international dispute involving claims under Rule 10b–5), which, with the exception of any endorsement in those opinions of prior case law allowing for stays of arbitration, we largely adopt today. Accordingly, we reject appellants' assertion that the district court abused its discretion in ordering the stay.

*Affirmed.* No costs.