USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1010

 DENNIS G. MORANI,

 Plaintiff, Appellant,

 v.

 WILLIAM LANDENBERGER and COMMONWEALTH EQUITY SERVICES, INC.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]

 Before

 Selya, Boudin and Lynch,
 
 Circuit Judges. 
 
 
 
 
 Dennis G. Morani on brief pro se.
 Thomas G. Nicholson and Finneran & Nicholson, P.C. on brief
for appellees.

November 2, 1999

 
 
 BOUDIN, Circuit Judge. This appeal arises out of a
troubling dispute between appellant Dennis Morani and his former
financial advisor, appellee William Landenberger.
 Morani alleges that, during and subsequent to his
recovery from a motor vehicle accident that left Morani brain
damaged, Landenberger fraudulently advised him and his wife to
accept an inadequate lump sum settlement from their disability
insurer and to invest the money through Landenberger and the
brokerage company he represented, appellee Commonwealth Equity
Services, Inc. ("Commonwealth"). Landenberger then allegedly
recommended and executed inappropriate investments, "churned" the
account by making frequent trades so as to maximize his
commissions, and failed adequately to disclose commission rates and
other investment details to the Moranis.
 After learning of Landenberger's alleged misconduct,
Morani filed a pro se complaint in the federal district court in
Massachusetts. He alleged that Landenberger and Commonwealth had
violated various federal securities laws--based on Landenberger's
advice regarding the insurance settlement, the inappropriate
investments and churning, and the lack of disclosure. However,
when they first opened their investment account, the Moranis had,
along with Landenberger, signed a "Pre-Dispute Arbitration
Agreement." The agreement provided that
 [the parties] agree that all controversies
 that may arise between us concerning any order
 transaction, or the continuation, performance,
 or breach of this or any other agreement
 between us, whether entered into before, on,
 or after the date of this account is opened,
 shall be determined by arbitration before a
 panel of independent arbitrators . . . .

The agreement warned, inter alia, that "[a]rbitration is final and
binding on the parties" and that "[t]he parties are waiving their
right to seek remedies in court, including the right to jury
trial." 
 After filing the pro se complaint, Morani retained
counsel and, in October 1997, filed a "Uniform Submission
Agreement"--thus submitting certain claims against Landenberger and
Commonwealth to an arbitration panel sponsored by the National
Association of Securities Dealers and agreeing to "abide by" any
resulting arbitration award. Morani's "Statement of Claim" echoed
the allegations in the pro se complaint regarding churning and the
inadequate insurance settlement. The Moranis sought compensatory
damages of $360,000 ($335,000 based on the inadequate insurance
settlement and $25,000 based on churning) plus punitive damages.
 Landenberger and Commonwealth then moved to dismiss
Morani's complaint in the district court for failure to state a
claim or, in the alternative, to stay the district court action
pending the outcome of arbitration, arguing that relief could not
be granted in the district court because all of Morani's claims
were covered by a valid arbitration agreement. By endorsement, the
district court stayed the case pending arbitration. At that point,
Morani had already initiated arbitration proceedings in the manner
described above. 9 U.S.C. 3.
 The arbitration hearing, at which Morani was represented
by counsel, took place over five days in July and August 1998, and
resulted in a $10,000 award, issued on October 1, 1998. The three-
member arbitration panel did not make any findings of fact or
otherwise explain the basis for the award; indeed, the arbitration
agreement provides that "[t]he arbitrators' award is not required
to include factual or legal reasoning." Unsatisfied with the
outcome, Morani returned pro se to district court, moved to vacate
the arbitration decision and requested a hearing or trial on his
original complaint. Appellees opposed Morani's motions and
apparently revived their own motion to dismiss.
 On November 20, 1998, after a hearing, the district court
denied the motion to vacate and, treating the motion to dismiss as
a motion for summary judgment, Fed. R. Civ. P. 12(b), 56, granted
summary judgment for the appellees, stressing in a written opinion
that Morani had voluntarily submitted his claims to arbitration by
filing the Uniform Submission Agreement and Statement of Claim and
that "[t]his Court must hold the plaintiff to that voluntarily-
entered-into agreement." Morani filed a timely notice of appeal to
this court.
 Arbitration awards are subject only to limited review. 
We will vacate an award only on the narrow grounds specified by the
Federal Arbitration Act, 9 U.S.C. 10, or in other extreme
situations including "instances where it is clear from the record
that the arbitrator recognized the applicable law--and then ignored
it." Advest, Inc. v. McCarthy, 914 F.2d 6, 9 (1st Cir. 1990). 
 Morani's principal contention is that the arbitration
award should be set aside because he was not able to question
Landenberger before the arbitration panel. What appears to have
happened is this: after presenting testimony from several
witnesses, but not Landenberger, Morani's lawyer indicated that he
was prepared to rest his case. The lawyer apparently expected,
based on witness lists prepared by the appellees' counsel, that
Landenberger would testify on his own behalf and would thus be
subject to cross-examination. In fact, the appellees did not call
Landenberger, and Morani apparently was not permitted to reopen his
case in order to question him. 
 Because arbitration proceedings do not necessarily follow
typical courtroom procedure, there may be cases in which unexpected
application of strict procedural rules could rise to the level of
"misconduct . . . in refusing to hear evidence pertinent and
material to the controversy," one ground for vacatur under 9 U.S.C.
 10(a)(3). See, e.g., Harvey Aluminum (Inc.) v. United
Steelworkers of America, 263 F. Supp. 488, 491-94 (C.D. Cal. 1967). 
But Morani's lawyer surely should have realized that, after
presenting witness testimony for several days and then resting his
case, he might not be able to introduce additional non-rebuttal
testimony.
 Morani's other main argument is that he did not
understand the original arbitration agreement that he signed on
opening the account and that it was induced by fraud. This may
not be a frivolous argument in light of Morani's brain damage, see
generally Krasner v. Berk, 319 N.E.2d 897, 898-900 (Mass. 1974),
and perhaps it could have been used to counter a motion to compel
arbitration, see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388
U.S. 395, 403-04 (1967). But Morani can hardly disavow the
agreement at this late stage after invoking it himself and
proceeding to arbitration with the assistance of counsel.
 There is one problem remaining. Morani says some of the
claims raised in his pro se complaint were not subject to dismissal
or summary judgment because they were not in fact arbitrated. 
Morani's brief in this court then describes the issues he now wants
to pursue, and some of them are issues that clearly were
arbitrated. This is apparent after comparing his brief with the
arbitrators' own written statement, at the close of the
arbitration, as to the issues actually arbitrated.
 Nevertheless, Morani's premise is likely correct in part.
His district court complaint arguably covers four different claims,
and available evidence suggests that he probably submitted only two
of those claims in the arbitration proceeding. Specifically, the
complaint makes the following allegations against Landenberger: (1)
fraudulent advice regarding the insurance settlement; (2) excessive
and inappropriate trading (churning); (3) failure to provide
prospectuses and forgery of prospectus receipts; and (4) failure to
disclose commission rates and other fees. Based on Morani's
statement of claim and the arbitrators' decision, Morani appears to
have submitted only the first two claims to arbitration.
 There are two problems with this argument for Morani. 
The first is that very little of this was made clear to the
district court. Morani did not make this argument either in his
written opposition to the renewed motion to dismiss nor in his
lengthy oral presentation at the hearing; Morani's wife, who also
spoke at the hearing, did refer very briefly to forgery of
prospectus receipts as an issue not resolved by arbitration; but
when the district judge said (mistakenly) that this was a new claim
not raised in the original complaint, neither of the Moranis
corrected the district judge.
 We are not going to rely on this failure adequately to
preserve the issue, because counsel for the appellees explicitly
told the district judge that all claims pressed in Morani's
complaint had been submitted to arbitration; defense counsel twice
repeats that statement in his appellate brief. This appears, as we
have just explained, to be an inaccurate statement. And it is a
reasonable guess that in considering the motion to dismiss the
district court wrongly assumed that the arbitration proceeding did
encompass all of the claims set forth in Morani's district court
complaint.
 However, Morani faces a second difficulty. Those claims
in Morani's complaint that he chose not to submit to arbitration
were nevertheless arbitrable under the agreement, or at least he
does not give us any reason to think otherwise. In effect what
Morani is saying is that when the district judge stayed the
proceeding pending arbitration, Morani was entitled to submit some
of his claims to the arbitrators, withhold others, and say nothing
to the judge about this reservation until after the arbitrators had
acted and the case had returned to court. It seems to us that
Morani is not entitled to a second bite at the apple without some
adequate explanation for withholding claims that were arbitrable
but were apparently not submitted. 
 It is hard to find any direct precedent on this issue: 
if arbitration is welcomed, the complaining party is usually
anxious to submit all of its arguably arbitrable claims to
arbitration; conversely, if arbitration is disputed, normally an
order issues directing arbitration of arbitrable claims. E.g.,
Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16
(1st Cir. 1986). Here, the district court simply endorsed a stay
pending arbitration since the parties were by then agreed that
arbitration should occur; but surely the court intended that
whatever claims in the complaint were arbitrable should be
submitted to the arbitrators at the same time. No other reading of
the stay makes sense.
 We might feel differently about this point if Morani were
being disadvantaged on a technical issue for lack of counsel. Cf.
Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert.
denied, 118 S. Ct. 1165 (1998). But here, Morani did have counsel
when determining what to submit to arbitration and in conducting
the arbitration proceeding. It was his counsel's job, which may
well have been performed quite properly, to select for arbitration
those claims that provided some prospect of success. In any event,
to the extent Morani failed to present some claims to arbitration
that were set forth in the complaint and were arbitrable under his
agreement, this was a counseled decision.
 We add that the district judge made every effort to give
Morani a fair opportunity to be heard, and the judge did all he
could to untangle a morass of allegations. The judge heard not
only from Morani and his wife but also from a non-lawyer advocate
whom Morani brought to court, and the judge pressed both sides in
an effort to develop information that neither side had explained
adequately.
 The judgment of the district court is affirmed. Each
side will bear its own costs on the appeal.
 It is so ordered.