# United States Court of Appeals
## For the First Circuit

No. 14-1353

JOCA-ROCA REAL ESTATE, LLC,

Plaintiff, Appellant,

v.

ROBERT T. BRENNAN, JR.,

Defendant, Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]
[Hon. John H. Rich, III, U.S. Magistrate Judge]


Before

Lynch, Chief Judge,
Selya and Kayatta, Circuit Judges.


Jeffrey T. Piampiano, with whom Reade E. Wilson and Drummond Woodsum & MacMahon were on brief, for appellant.
Matthew J. Williams, with whom Stephen Y. Hodsdon and Hodsdon & Ayer were on brief, for appellee.


December 1, 2014

**SELYA, Circuit Judge.** Federal law favors agreements to arbitrate. Thus, when contracting parties provide that disputes arising under a contract will be resolved by arbitration, federal courts ordinarily will honor that choice. But arbitration clauses are not set in cement: such clauses can be waived, either expressly or through conduct. The court below found such a conduct-based waiver and denied the plaintiff's motion to stay court proceedings in order to clear the way for arbitration. The plaintiff appeals. We affirm.

The stage is easily set. On September 18, 2005, plaintiff-appellant Joca-Roca Real Estate, LLC and defendant-appellee Robert T. Brennan, Jr., entered into an asset purchase agreement (the Agreement). The Agreement paved the way for the transfer of title to certain real property that served as the site of an intermodal vehicle dealership in South Lebanon, Maine.[1] The Agreement contained a broad provision requiring submission of all disputes "concerning the validity, interpretation and enforcement" of the Agreement to an arbitrator for final and binding resolution.

The plaintiff came to believe that the defendant had misled it concerning certain attributes of the purchased property. Acting on this belief, the plaintiff sued the defendant in the

---

[1] Although other firms were parties to the Agreement, none of them is involved in this litigation. Consequently, we treat the Agreement as if the plaintiff and the defendant were the only signatories.

United States District Court for the District of Maine on March 4, 2013.  Invoking diversity jurisdiction, see 28 U.S.C. § 1332(a), the plaintiff's complaint asserted claims for fraud and breach of contract arising out of the Agreement.  Notably, the plaintiff commenced this civil action without making the slightest effort to pursue arbitration.

The defendant answered the complaint, raising as an affirmative defense (which it subsequently never pressed) the plaintiff's "fail[ure] to seek relief in the manner required under" the Agreement.  A magistrate judge promptly entered a scheduling order closing discovery in August of 2013 and setting the case for trial in January of 2014.  The parties began discovery and, at their joint behest, the magistrate judge granted several extensions of the discovery deadline.  That deadline was eventually enlarged to December 16, 2013; the trial date was moved back to February 3, 2014; and the parties were directed to notify the court of their intent to file summary judgment motions by December 23, 2013.

During the course of pretrial proceedings, the parties conducted sixteen depositions, propounded and answered interrogatories, and produced and exchanged thousands of pages of documents.  In the process, the magistrate judge held no fewer than four telephone conferences to resolve discovery disputes and scheduling conflicts.

On December 6, 2013, the plaintiff moved to stay proceedings pending arbitration. The motion offered no explanation for the plaintiff's cunctation in invoking the Agreement's arbitration provision. The defendant objected and notified the court of his intent to move for summary judgment. The magistrate judge then denied the motion to stay on the ground that the plaintiff had waived its arbitral rights. The plaintiff took a first tier appeal of this ruling to the district judge, see Fed. R. Civ. P. 72(a), who summarily affirmed the denial of the stay.

This timely appeal followed. Even though the order appealed from is interlocutory, we have jurisdiction to hear and determine the appeal. See 9 U.S.C. § 16(a)(1)(A) (authorizing immediate appeals from denials of motions to stay court proceedings pending arbitration).

We review decisions regarding whether waivers of arbitral rights have occurred de novo. See Menorah Ins. Co. v. INX Reins. Corp., 72 F.3d 218, 220 (1st Cir. 1995). Embedded within this standard, we review subsidiary findings of fact for clear error. See id.

Generally speaking, what contracting parties take they can give away — and parties to a contract normally are free to waive the right to arbitration. See Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 60 (1st Cir. 2003). Such a

-4-

waiver may be either express or implied. See id. at 61. This case deals only with implied waiver.

In considering whether a waiver can be implied, we start with the strong federal policy favoring arbitration agreements. See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745, 1749 (2011); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Given the strength of this policy, "mere delay in seeking [arbitration] without some resultant prejudice" is insufficient to ground a finding of conduct-based waiver. Creative Solutions Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (alteration in original) (internal quotation marks omitted). The party advocating waiver has the burden of demonstrating prejudice. See Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 19 (1st Cir. 1986).

In determining whether a conduct-based waiver has occurred, we ask whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15 (1st Cir. 2005); Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003). That determination is informed by a salmagundi of factors, including: the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have

already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced. See, e.g., Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc.), 376 F.3d 23, 26 (1st Cir. 2004); Restoration Pres. Masonry, 325 F.3d at 61.

In the case at hand, the plaintiff asseverates that the district court applied the wrong legal standard because it found a waiver of arbitral rights without requiring a showing of prejudice to the defendant.[2] This is pie in the sky: even a cursory reading of the district court's decision reveals that the court applied the correct legal standard. The court noted that the party urging waiver (here, the defendant) must demonstrate prejudice and then considered whether the delay in this case resulted in any such prejudice. Thus, the issue before us reduces to whether the court's waiver determination was correct. We turn to that question.

It is common ground that a party must invoke its right to arbitration in a timeous manner or else risk forfeiting that right. See Rankin, 336 F.3d at 12. Here, the plaintiff commenced a civil action, vigorously prosecuted it, and then — after many months of

---

[2] The plaintiff's asseveration focuses on the rescript written by the magistrate judge. This is understandable because the district judge's affirmance of the magistrate judge's order was entered without an accompanying opinion. We take an institutional view and refer throughout to the magistrate judge's analysis as that of the district court.

active litigation — tried to switch horses midstream to pursue an arbitral remedy. To make matters worse, it made this abrupt about-face in the absence of any material change in circumstances.[3]

Seen in this light, the plaintiff's belated resort to arbitration was anything but timely. The plaintiff chose to eschew an available arbitral forum and, instead, brought suit in the federal district court. The defendant then reminded the plaintiff of the availability of arbitration through an affirmative defense. The plaintiff turned a blind eye to this reminder and waited more than eight months before seeking a stay in order to pursue arbitration. By that time, the close of discovery was hard at hand, a summary judgment motion was in the offing, and trial was less than two months away. Undue delay is manifest.

Here, moreover, the delay is more troubling because the plaintiff never offered any explanation for it. When directly questioned about the plaintiff's lack of any explanation for its belated decision to abandon the courtroom in favor of an arbitral forum, appellate counsel was wholly uninformative. We are left to infer that the change in direction may well reflect the plaintiff's dissatisfaction with the way the court case was proceeding — and we

---

[3] This is not, for example, a case in which an amendment to the pleadings or a later-filed counterclaim raises an arbitrable issue for the first time. See, e.g., Comm'l Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 387 & n.1 (1st Cir. 1993).

do not condone the use of an arbitration clause as a parachute when judicial winds blow unfavorably.

To be sure, prejudice is essential for a waiver — but the required showing is "tame at best." Id. at 14. Some degree of prejudice ordinarily may be inferred from a protracted delay in the assertion of arbitral rights when that delay is accompanied by sufficient litigation activity. See, e.g., id.; Restoration Pres. Masonry, 325 F.3d at 61; Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 316 (1st Cir. 1997); Menorah, 72 F.3d at 222. That inference makes good sense: during such a period of delay, the opposing party usually will incur cost, measured in both out-of-pocket expense and the value of time.

So it is here: the plaintiff's conduct evinced a clear intent to forgo arbitration and resolve the disputed matter through litigation. In response, the defendant undertook the discovery that he believed necessary to mount a defense. Over a period of more than eight months, the parties engaged actively in discovery; and the defendant incurred what must have been substantial costs associated with more than a dozen depositions, interrogatories, document production, and conferences with the magistrate judge and opposing counsel. With trial looming, an eleventh-hour stay in favor of arbitration would have forced the defendant into a new forum and, in the bargain, postponed resolution of the underlying

controversy.  That would cause the defendant further prejudice[4] and nullify one of the primary benefits of arbitration: its use as a cost-effective and expedient alternative to litigation.  See Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576-77 (2d Cir. 1991).

The plaintiff resists the conclusion that the defendant would be prejudiced by a stay.  It insists that delay, by itself, cannot constitute the requisite prejudice.  This overly broad argument fails to account for the myriad forms of prejudice that may result from a belated invocation of rights.

We agree that mere delay in asserting a right to arbitrate, without more, does not require a finding of waiver.  See, e.g., Restoration Pres. Masonry, 325 F.3d at 61; Creative Solutions, 252 F.3d at 32; Comm'l Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 390 (1st Cir. 1993).  Here, however, there is more: this is not a case in which no significant activity occurred during the period of delay.  We evaluate whether any particular period of delay supports a finding of prejudice based largely on what did (or did not) take place during that period.

---

[4] This prejudice is magnified because the district court proceedings have been held in abeyance since May of 2014, despite the absence of a formal stay.  Without the plaintiff's change of heart, this matter likely would have been concluded, by summary judgment or by trial, before now.  Instead, the parties have remained locked in litigation and face the certain prospect of further proceedings at the conclusion of this appeal.

This appraisal is accomplished by assaying, among other things, the "litigation activities engaged in during that time." Restoration Pres. Masonry, 325 F.3d at 61. Where those activities are extensive, prejudice may be "inferred from the necessary expenditures over that period." Id.; accord Rankin, 336 F.3d at 14; Menorah, 72 F.3d at 222.

The longer the delay and the more extensive the litigation-related activities that have taken place, the stronger the inference of prejudice becomes. Here, the delay was protracted and the litigation-related activities were copious. These are the very elements that the district court weighed in finding a waiver.

Endeavoring to undermine this finding, the plaintiff argues that money and time spent in discovery should not be deemed prejudicial where the same discovery would have been pursued in arbitration.[5] In support, the plaintiff cites our decision in Sevinor,[6] in which we concluded that the party resisting

---

[5] As an offshoot of this argument, the plaintiff posits that much of the discovery undertaken in this matter was relevant only to its fraud claim, the arbitrability of which is disputed. It speculates that if the fraud claim is not arbitrable, discovery anent that claim would have been necessary regardless of what might have transpired in arbitration. But the plaintiff has made no effort in this court either to explain why the fraud claim might not be arbitrable or to identify what discovery was peculiarly related to that claim. This line of argument is, therefore, not properly before us. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[6] The plaintiff also relies on Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291 (1st Cir. 1986), abrogated on other grounds by Shearson/Am. Express, Inc. v. McMahon, 482 U.S.

-10-

arbitration had not demonstrated prejudice though answering over 300 interrogatories and responding to a dozen requests for document production. See 807 F.2d at 19. But our decision in Sevinor was case-specific: the party invoking arbitration had put its opponent on notice of its preference for arbitration before any discovery, thus ameliorating any potential prejudice. See id.; accord Hilti, Inc. v. Oldach, 392 F.2d 368, 371 (1st Cir. 1968). Early notice of intent to pursue arbitration tends to mitigate prejudice by allowing the opposing party to seek prompt resolution of the arbitrability question or consider circumscribed discovery. See Nino v. Jewelry Exch., Inc., 609 F.3d 191, 211 (3d Cir. 2010). The plaintiff gave no such early notice here, and its unremitting pursuit of litigation deprived the defendant of any opportunity to mitigate prejudice.

Nor does the district court's professed inability to determine which discovery procedures undertaken in this litigation would have been available in arbitration tip the decisional scales. The defendant could have offered evidence on this point, but was not required to do so; after all, arbitration is not an exotic dispute-resolution mechanism. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) (noting "the simplicity, informality, and expedition of arbitration" (internal quotation

220 (1987). This reliance is misplaced. In Page, the party opposing arbitration stipulated that discovery had not been prejudicial. See id. at 294.

-11-

marks omitted)).  Given the streamlined nature of arbitration and the limited type, kind, and quantum of discovery generally available in that forum, we think it highly improbable that the discovery undertaken here would have occurred in arbitration.  And at any rate, the plaintiff's belated about-face deprived the defendant of any opportunity to tailor his discovery strategy to the much different demands of arbitral proceedings.[7]

We need go no further.  "[T]here is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts."  Tyco Int'l Ltd. v. Swartz (In re Tyco Int'l Ltd. Sec. Litig.), 422 F.3d 41, 46 (1st Cir. 2005).  According due weight to the chronology and circumstances recounted above, we think it is nose-on-the-face plain that the defendant demonstrated that granting a stay would cause him prejudice.  We think it equally plain that the district court did not err in concluding that the plaintiff has, through its conduct, waived its right to demand arbitration.

**Affirmed.**

---

[7] We add a coda.  Even if the discovery taken in the lawsuit could have been conducted in arbitration, the fact remains that the defendant had to respond to a lawsuit, litigate it over a nine-month period, prepare for trial, and then — shortly before trial was to begin — respond to a belated attempt to move the case to an arbitral forum.  The time spent and expenses incurred in taking these steps would support a finding of prejudice, whether or not the scope of discovery was the same in arbitration as in federal court.